# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **MCLAREN HEALTH CARE CORPORATION,** <br><br> Plaintiff, <br><br> v. <br><br> **GARTNER, INC.,** <br><br> Defendant. | 2:21-CV-12598-TGB-CI <br><br> HON. TERRENCE G. BERG <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO SEAL (ECF NOS. 57 & 59), DENYING DEFENDANT'S MOTION TO SEAL (ECF NO. 63), AND GRANTING PLAINTIFF'S MOTION TO COMPEL REPRODUCTION OF CLAWED-BACK EMAIL (ECF NO. 59-1)** |

In this contract dispute, the parties seek the Court's intervention, again, to help resolve a discovery dispute. Plaintiff McLaren has moved to compel the re-production of an email that Defendant Gartner previously produced in discovery but later clawed back. ECF No. 59-2. The Court tried to resolve this dispute following the Court's informal discovery resolution process. The parties submitted a joint email submission describing their respective positions in January 2025 which were considered along with counsel's arguments during a Telephonic Status Conference held on February 11, 2025. The informal process failed, however, after additional email submissions from each party were submitted on February 14, 2025, followed by formal briefing in the form of public redacted pleadings, ECF Nos. 59-1, 63-1, & 67, and unredacted versions sought to be filed under seal, ECF Nos. 60 & 64. The email in

question, which Gartner produced but now seeks to "claw back," was submitted to the Court for *in camera* review, but is has not been filed as an exhibit on the docket.

For the following reasons, the Court concludes that the email in dispute is not privileged and may be produced in discovery because the predominant purpose of the email was business-related and not to seek legal advice. Consequently, the Court will **GRANT** Plaintiff's motion to compel Defendant to reproduce the clawed-back email.

## I. BACKGROUND

On February 4, 2020, Nancy Kulick, Defendant Gartner's Vice President and Central Region Lead, sent an email to Gartner's Human Resources ("HR") Team describing multiple concerns. This email was inadvertently produced in discovery, and Gartner now seeks to claw it back as privileged. This email was sent to Matthew Roland, Meeta Srivastava, and Katherine Graziano. Matthew Roland was a Managing Vice President for the U.S. Southeast Region Lead for Consulting. Katherine Graziano was the Vice President in charge of HR. Meeta Srivastava's title is not specified, but it appears she was a Senior Director in the HR department. None of the individuals to whom Kulick addressed her email were attorneys.

The email was submitted to the Court *in camera* together with several responses in the email chain that are clearly privileged. The email chain shows that, although Kulick did not address her email to

counsel directly and did not mark it as attorney-client privilege, the Director of HR did so when she responded to Kulick's email.

In its privilege log, Gartner included HR Director Graziano's email forwarding Kulick's email to Attorney Frederick and the subsequent email chain. But Kulick's initial email was inadvertently produced to McLaren and was not separately included in the privilege log. Gartner discovered this oversight while preparing for Kulick's deposition in November 2024. Gartner immediately invoked its claw-back right on the basis of attorney-client privilege and the work-product doctrine. Apparently conceding this point initially, McLaren chose not to question Kulick directly about her initial email during her deposition. After the deposition, however, McLaren moved this Court to compel Gartner to re-produce the initial email on the basis that it is not privileged.

## II. LEGAL STANDARD

"In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F. 3d 467, 472 (6th Cir. 2006). The proponent of a claimed privilege—here, Gartner—bears the burden of demonstrating that the privilege applies. *See United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) ("The burden of establishing the existence of the privilege rests with the person asserting it.").

3

## III. DISCUSSION

### A. Attorney-Client Privilege

The attorney-client privilege attaches to communications made by a client to an attorney acting as a legal adviser and made for the purpose of obtaining legal advice. *Herald Co. v. Ann Arbor Pub. Sch.*, 224 Mich. App. 266, 279 (1997). The scope of the privilege is narrow. *Id*.

As a preliminary matter, the attorney-client privilege can apply to communications between employees that were initiated for the purpose of seeking legal advice. *See, e.g.*, *Melea Ltd. v. All. Gas Sys.*, No. 04-70530, 2005 WL 8154557, at *2 (E.D. Mich. May 26, 2005)(Scheer, M.J.) ("Also privileged are confidential communications among members of a corporate management team for the purpose of obtaining or relaying advice of counsel."). In the same vein, although HR Director Graziano did forward Kulick's email to legal counsel and marked her response email as attorney client privilege, a business communication is not protected "merely because [it is] directed to an attorney. . . . Rather, the corporation must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice." *Burton v. Zwicker & Assocs., PSC*, No. 10-227-WOB-JGW, 2012 WL 12925675, at *2 (E.D. Ky. Jan. 9, 2012) (citation omitted); *see also Equal Emp. Opportunity Comm'n v. Formel D USA, Inc.*, No. 23-11479, 2024 WL 4370574, at *1 (E.D. Mich. Oct. 1, 2024)(Ivy, M.J.) (assessing each communication within an email chain individually, finding that the

4

original email was not privileged even if it was eventually forwarded to legal counsel).

Gartner takes the position that the purpose of Kulick's email was to seek legal advice, and thus it ought to be privileged. ECF No. 63-1. McLaren contends that the purpose of the email was business-related and should not be treated as privileged. ECF Nos. 59-1 & 67. "[T]rying to find *the* one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014) (emphasis in original). The Sixth Circuit explained that "[w]hen a communication involves both legal and non-legal matters, we 'consider whether the predominant purpose of the communication is to render or solicit legal advice.'" *Alomari v. Ohio Dep't of Pub. Safety*, 626 Fed. Appx. 558, 570 (6th Cir. 2015) (citing *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)) (noting that courts must assess the predominant purpose of the communication "dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer").

### 1. Kulick's Email

To determine whether the predominant purpose of a communication is to render or solicit legal advice, the analysis must begin by looking at what the communication itself says. Thus, the Court's

5

analysis of the privilege question turns in significant part on the precise content of the communication.[1] Because the Court finds the email not to be protected by the attorney-client privilege, and no party has represented that it contains confidential information, the Court has included relevant portions of the email in this Order so that the factual basis for the Court's reasoning will be available. Indeed, where information is not privileged or otherwise protected by some rule of confidentiality, it is not appropriate for the Court to base its decision on that information without disclosing it—rulings premised on secrets inspire no confidence.

Here, it is clear from the context of the email that its primary purpose was to alert the email recipients of the risk to the project posed by a problem employee's conduct and the need to manage the employee effectively so as to ensure the success of the team's work with the client. From the text of the email, it appears that the problem employee, Mike McCarty, is under some kind of personnel scrutiny as Kulick stated "he shared with the team that he's on a PfS," possibly a performance feedback

---

[1] While Gartner complains about McLaren's reliance on the contents of the clawed-back email in their motion, Gartner does not challenge the authority of the Court to review the email *in camera* to determine whether the privilege applies. *See, e.g.*, *Jackson v. Ethicon, Inc.*, 566 F. Supp. 3d 757, 764 (E.D. Ky. May 25, 2021) ("One method of establishing by a preponderance of the evidence that a particular communication is outside of the privilege scope is via in camera review."). In fact, Gartner asked the Court to do so.

system review. The email recounts the risk the problem employee poses to the McLaren project, explaining that he is "creating a toxic environment," has been disruptive, unprofessional, insubordinate, and possibly dishonest in his billing of the client as he was allegedly "overcharging hours" and "billed twice for the same work." The employee was also "demeaning" to his co-workers or supervisors.

The first listed recipient appears to be a manager (Roland), and the two other recipients are the Vice President and Senior Director of HR (Graziano and Srivastava). Thus, the email from Kulick is a "heads-up" or notification to the recipients of a problem employee whose behavior is threatening the success of Gartner's consulting project with McLaren. Kulick's concern for the success of the team's work is clear, as she specifically stated, despite her concerns, that:

> I believe in [the co-workers]' ability to put the client first and partner with [the problem employee]. We have an important client presentation where we need [the problem employee] to participate in 2 weeks – in the interim, we need to avoid risk.

But Kulick also wrote in the email that McCarty made statements indicating that he believed he might be fired, such as "If I get fired, I'm suing the company" or "If I go down, I'm taking this client with me." Gartner claims Kulick's purpose in sending the email was to alert HR to her perception of an actual threat of litigation against Gartner with the expectation that legal counsel would be brought in. But not all of the recipients of the email were part of HR, and some were solely business

7

managers, like primary recipient Matthew Roland. And, as stated, the vast bulk of the email discussed a management/personnel issue, not a threat of litigation. Moreover, while it is true that a perceived threat of a lawsuit may constitute reasonable anticipation of litigation for purposes of the work-product doctrine, *see United States v. Roxworthy*, 457 F.3d 590, 599-600 (6th Cir. 2006), courts have found the attorney-client privilege did not necessarily apply to communications merely because they mention possible legal allegations against a party.

For instance, in *Formel D USA*, cited above, the court found that an email containing the plaintiff's "allegations of harassment and retaliation" which was forwarded from the Human Resources Generalist to the Vice President was not "on its face . . . for the purpose of securing legal advice" while the subsequent email the VP sent to an attorney "to inform him of the allegations" was done "likely for the purposes of obtaining legal advice" and thus was privileged. *Formel D USA*, 2024 WL 4370574, at *1; *see also Lewis*, 266 F.R.D. at 441 ("[A] generalized fear of litigation does not turn a compliance audit into attorney work product.").

The same is true here: "on its face," the email Kulick sent to the HR team, though it mentioned McCarty's threat of litigation, was not for the purpose of obtaining legal advice, even though the subsequent email from HR Vice President Graziano forwarding the initial email to legal counsel inarguably was. *See Formel D USA*, 2024 WL 4370574, at *1. Indeed, the *explicit* purpose of Kulick's email was "to be sure that you're

8

aware of the situation," "to make sure that it's on your radar," and "to avoid risk" before and until an important client presentation in which Mike McCarty was needed to be an active participant.

In this sense, Kulick's email is similar to the unprivileged email in *M.H. v. Akron City School District Board of Education*, where a client forwarded to their general counsel an email they received from opposing counsel. No. 5:18-CV-870, 2019 WL 4346274, at *3 (N.D. Ohio Sept. 12, 2019). The body of the email accompanying the forwarded email stated "FYI." *Id*. The court noted that while "FYI" could be conceived as "implicitly seeking legal advice," it is "most commonly interpreted as simply passing along information with no further response or action required," especially where general counsel responded she would "take care" of the request, without providing legal advice. *Id*.

Similarly here, Kulick does not seek legal guidance or advice in this email but rather says that her purpose is to "be sure that you're aware of the situation," which is akin to "passing along information," first to the business managers, and secondarily to HR, about a personnel and management issue. *See id*.

Thus, the email did not explicitly request any legal advice, and to the extent that it did so implicitly, that request was clearly "incidental to considerations of what is most prudent for the successful operation of the business." *Alomari*, 626 F. Appx. at 572 (citing *Marten v. Yellow Freight Sys., Inc.*, 1998 WL 13244, at *8 (D. Kan. Jan. 6, 1998)). Her expressed

9

goal in the email was not to seek legal advice but to ensure that these employees worked effectively together because "[w]e have an important client presentation where we need Mike to participate in 2 weeks." Rather than seeking legal advice, the text of the email seeks guidance from management as to how to move forward on the business side of things.

Thus, a review of the email itself demonstrates that its predominant purpose was business-related, and not to seek legal advice. The reference to the employee possibly suing the company was clearly offered as an example of his disruptive conduct, it was not a prelude to a request for legal advice. The email's predominant purpose is to describe a personnel management issue that needs to be addressed by business managers in order to make the firm's consulting project succeed.

The Court concludes that Kulick's email is not protected from disclosure by the attorney-client privilege.

### 2. Kulick's Deposition

Gartner rests its claims of attorney-client privilege not on the content or context of the email itself but rather on Kulick's deposition testimony of November 21, 2024. But even considering the original email together with the statements by Kulick in her deposition, the Court still finds that the predominant purpose of the email was business-related and therefore the email is not protected under the attorney-client privilege.

10

To address Gartner's arguments that Kulick's deposition testimony supports a finding that the email is privileged, the Court must perform a detailed review and careful legal analysis of that testimony. But both parties have sought to file the portions of the testimony they seek to rely on under seal. *See* ECF Nos. 59 & 63. The Court may grant a motion to seal "only upon a finding of a compelling reason why certain documents or portions thereof should be sealed." E.D. Mich. R. 5.3(b)(3)(C)(i). In fact, "[t]here is a 'strong presumption in favor of openness' regarding court records," and the party seeking to limit public access to court proceedings or records bears the "heavy" burden of overcoming the presumption of openness. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016)). "Only the most compelling reasons can justify non-disclosure of judicial records. . . . And even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason." *Id.* at 305–06 (quotations and citations omitted). Here, the only explanation provided for sealing the deposition transcript is that Gartner designated it as confidential under the Stipulated Protective Order in this case (ECF No. 28) and that Gartner alleged the transcript "contains confidential business information" (ECF No. 63).

But to succeed on a motion to seal, the movant must provide a "detailed analysis, with supporting evidence and legal citations, demonstrating that the request to seal satisfies controlling legal

authority." E.D. Mich. R. 5.3(b)(3)(A)(iv); *see also Shane Grp.*, 825 F.3d at 305–06 ("The proponent of sealing therefore must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations."). The party seeking to seal documents must "(1) detail the necessity and legal support for sealing, (2) explain why the need for privacy outweighs the public's right to access, and (3) ensure the request is limited in its scope." *United States v. Han*, No. 21-20256, 2024 WL 3905811, at *1 (E.D. Mich. Aug. 22, 2024)(Parker, J.) (citing *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.2d 589, 594 (6th Cir. 2016)). The "failure to set forth reasons explaining why the interests in support of nondisclosure are compelling, why the interests in support of access are less so, and why the seal itself is no broader than necessary is grounds to" deny a request to seal, *see McPheeters v. United Services Automobile Assn.*, 549 F. Supp. 3d 737, 751 (S.D. Ohio July 13, 2021), "even when there is no objection from the nonmoving party," *Han*, 2024 WL 3905811, at *1.

      The parties' Stipulated Protective Order itself acknowledged that self-designating a document as confidential pursuant to a protective order does not necessarily satisfy the "more demanding standards for sealing off judicial records from public view." ECF No. 28, PageID.544 (citing *Shane Grp.*, 825 F.3d at 305); *see also Rudd Equip. Co.*, 834 F.2d at 594-95 (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)) (noting that, "[i]n civil litigation, only trade secrets,

12

information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)," is typically enough to overcome the presumption of access).

That is because a protective order cannot "adjudicate the court's responsibility to preserve the public's access right" and courts must not "turn [that responsibility] over to the parties" without "any specific findings of harm, without any balancing of the public's interest against the parties', and with no evident attempt at narrow tailoring." *Tri-County Wholesale Distribs. v. Wine Group, Inc.*, 565 Fed. Appx. 477, 486 (6th Cir. June 29, 2012) (Gwin, C.J., dissenting).[2] Thus, courts should not blindly rely on parties' self-designation of a document as "confidential" when deciding a motion to seal such a document. *See, e.g., Back v. Ray Jones Trucking, Inc.*, 2024 WL 4594828, at *1 (W.D. Ky. Oct. 28, 2024) (denying motion to compel even though third-party designated documents as confidential pursuant to a stipulated protective order).

---

[2] The majority agreed with the dissent that a stipulated protective order providing that the parties would file "self-designated confidential documents under seal" was "overly broad and improperly entered." *Tri-County Wholesale Distribs.*, 565 Fed. Appx. at 484. The dissent would have "vacate[d] the parties' stipulated protective order and permit the parties to move the district court for appropriate redactions," while the majority remanded the issue for consideration by the district court "[b]ecause the matter was not fully presented to this court." *Id.* at 484-86.

13

Here, Gartner falls short of a "detailed" analysis regarding the necessity and propriety of sealing Kulick's deposition transcript. *See* E.D. Mich. R. 5.3(b)(3)(A)(iv). The Stipulated Protective Order similarly fails to provide additional insight into the necessity for sealing, as it only states:

> Any portions of requested testimony, a transcript and/or a brief may be designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" if the party or attorney making the designation reasonably and in good faith believes it will reveal a trade secret or other confidential research and development, commercial, or sensitive information.

ECF No. 28. Gartner did not allege—and the Court does not find—that Kulick's testimony shares trade secrets, confidential research and development, or commercial information. It is not clear to the Court how the information Kulick shared may be deemed "sensitive," or at least sensitive enough to justify shielding it from the public's view. Unlike the cases Gartner cited in support, the Court does not find that the deposition transcript, on its face, shows "confidential and proprietary business information related to [the company's] internal processes," *McPheeters*, 549 F. Supp. 3d at 752, or "nonpublic, confidential information" of the company, *Goodman v. J.P. Morgan Investment Mgmt, Inc.*, 301 F. Supp. 3d 759 (S.D. Ohio Mar. 9, 2018).

Furthermore, while the parties in *McPheeters* and *Goodman* both alleged that the disclosure of the confidential information would cause a "competitive harm" or "disadvantage" because such information could be

14

used by a competitor to gain an unfair advantage, Gartner makes no such allegation here. *See McPheeters*, 549 F. Supp. 3d at 752; *Goodman*, 301 F. Supp. 3d at 783; *see also Rudd Equip. Co.*, 834 F.3d at 594 ("Even taking Rudd at its word regarding the serious business consequences at stake should this case be unsealed, more is required."); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) ("Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records.").

Moreover, the parties in *Goodman* "provided extensive justification for redacting this confidential information," and "analyze[d] in detail . . . the propriety of secrecy, providing reasons and legal citations." 301 F. Supp. 3d at 783-84. On the contrary, sealing of a document was not justified in *McPheeters* where—as here—the document sought to be redacted "explain[ed] the proprietary documents only general[y] and could not possibly betray any trade secrets of substantive value." 549 F. Supp. 3d at 752.

In addition to the lack of a compelling need for sealing the transcript, the public interest in disclosure, on the other hand, is significant as "the public will need to review the specific contents" of the exhibit sought to be sealed to understand the Court's ruling as to the clawed-back document. *McPheeters*, 549 F. Supp. 3d at 752. Gartner is asking the Court to review the deposition transcript to determine

15

whether the email is privileged, even though the email on its face does not appear to be privileged, as explained above. Thus, the Court is required to disclose the contents of the deposition to explain its reasons for rejecting Gartner's attorney-client privilege claim.

On balance, the Court does not find reasons compelling enough to justify shielding the transcript from public view. *See also Numatics, Inc. v. Balluff, Inc.*, No. 13-11049, 2014 WL 12662313, at *1 (E.D. Mich. June 5, 2014), *on reconsideration*, No. 13-11049, 2014 WL 12662312 (E.D. Mich. June 20, 2014)(Lawson, J.) ("[F]rom the information provided, the Court is unable to determine which documents marked as 'Confidential' . . . are sufficiently secret to 'outweigh the public interest in disclosure.'").

Because the parties have not shown sufficiently compelling reasons to seal the deposition excerpts, the motions to seal the deposition transcript (ECF Nos. 57, 59, & 63) are **DENIED**. Pursuant to E.D. Mich. R. 5.3(b)(3)(C)(iii), when the Court denies a sealing motion, (1) the unredacted documents filed under seal remain sealed for purposes of preserving the record, (2) the Court will not rely on the unredacted version of the documents sought to be sealed unless the moving party promptly files the unredacted version, but (3) the Court may rule on the underlying filing without regard to any document sought to be sealed.

The Court pursued the latter option, ruling on the underlying motion to compel without considering the deposition segments that were sought to be filed under seal. Thus, the parties may proceed based on this

16

order **GRANTING** Plaintiff's motion to compel Defendant to reproduce the clawed-back email, as explained above. *See* III.A.1. If the parties desire the Court to provide a detailed order supplementing its reasoning specifically taking into account the content of Kulick's deposition as it relates to the email, the parties must file Kulick's email and deposition transcript as public exhibits and re-file the briefs on the public docket within seven (7) days of entry of this Order. This is so that the sources may be cited in the order and the public may "assess for itself the merits of [the] judicial decision[ ]" and "ascertain[ ] what evidence and records the [d]istrict [c]ourt[ ] . . . relied upon in reaching [its] decision[ ]." *Shane Group*, 825 F.3d at 305.

### B. Work Product

Defendant also claims the work-product doctrine applies to Kulick's email. The work-product doctrine "protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative." *Roxworthy*, 457 F.3d at 593 (citing Fed. R. Civ. Proc. 26(b)(3)). A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared "in anticipation of litigation." *Id.* When a document was created "for both business and litigation purposes," it is protected under the work-product doctrine "unless the document[ ] would have been created in substantially the same form absent the prospect of

17

litigation." *Flagstar Bank v. Fed. Ins. Co.*, No. 05-CV-70950-DT, 2006 WL 6651780, at *5 (E.D. Mich. Aug. 21, 2006).

Here, Kulick's mention of McCarty's threat of litigation could suggest the email was prepared, at least in part, in anticipation of litigation. *See Roxworthy*, 457 F.3d at 599-600 (noting that having a specific claim in mind, supported by concrete facts which could likely lead to litigation, can constitute objectively reasonable anticipation of litigation). But even assuming for the sake of argument that Kulick drafted her email partially in anticipation of litigation, in view of the full context of the email, it appears Kulick would have sent it "in substantially the same form" irrespective of the risk of litigation. *See Flagstar Bank*, 2006 WL 6651780, at *5. In fact, as explained above, the driving force behind Kulick's email was reporting a personnel issue ahead of an important meeting with a problematic employee. The email describes the incidents of McCarty's conduct that led to the breakdown in the team's working relationship, of which his threat of litigation was merely one example.

Consequently, because the email does not appear primarily to have been prepared for litigation purposes, and would have been prepared in substantially the same form regardless of the prospect of litigation, it is not protected from disclosure under the work-product doctrine.

## IV. CONCLUSION

For the aforementioned reasons, both parties' Motions to File Under Seal, ECF Nos. 57, 59, & 63, are **DENIED**, and Plaintiff's motion to compel Defendant to reproduce the clawed-back email (ECF No. 59-1) is hereby **GRANTED**.

**SO ORDERED**.

Dated: September 2, 2025       /s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE