UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MCLAREN HEALTH CARE CORPORATION,** | **2:21-CV-12598-TGB-CI** |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO FILE UNDER SEAL (ECF NO. 70)** |
| **GARTNER, INC.,** | |
| Defendant. | **AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL (ECF NO. 71)** |

Presently before the Court is Defendant Gartner's Motion to Compel the production of interview notes that may have been taken by Plaintiff McLaren's expert and the deposition of the individuals who were interviewed by Plaintiff's expert. ECF No. 71. This is the third discovery dispute raised by the parties requiring the Court's formal involvement.

The Court has reviewed the parties' email submissions, briefs, and arguments made during a status conference held on June 25, 2025. For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's Motion to Compel (ECF No. 71). The Court will also **GRANT IN PART** and **DENY IN PART** Defendant's Motion to File Exhibits Under Seal (ECF No. 70).

## I. BACKGROUND

This case commenced nearly four years ago on November 4, 2021. The parties have engaged in rigorous fact discovery for close to three years, during which the parties produced thousands of documents and deposed twenty-five witnesses. The period allowed for fact discovery concluded on May 16, 2025. A month later, McLaren served its expert disclosures pursuant to Rule 26(a)(2). Gartner's expert disclosures were due on August 7, 2025. Expert discovery was scheduled to have concluded on September 8, 2025, but the repeated filing of discovery dispute litigation by Gartner will cause this date to be extended.

McLaren's expert, Dr. James Langenfeld, produced his expert report on June 17, 2025. That report includes an exhibit describing the "materials considered." ECF No. 71-2 (sealed), PageID.1006. Based on that exhibit, it appears that in forming his opinions, Dr. Langenfeld "considered" information from 18 interviews he conducted with 10 different McLaren employees. *Id.* at PageID.1106-07.

In Dr. Langenfeld's report, he carefully cites to some of those interviews that he relied upon in forming his opinion—which would be those he explicitly cited as support—distinguishing them from interviews that he considered as part of the entire set of facts before him—which would be all of the interviews because they were part of the universe of information he learned. Some of the witnesses interviewed by Langenfeld were disclosed by McLaren; some were not.

The Court summarizes, in the table below, the references in Dr. Langenfeld's report to these interviews, including whether they were "considered," cited, and the nature of any prior disclosure.

| Interviewee | Discussions "considered" | Discussions cited as support | Disclosure |
|---|---|---|---|
| Brenda Baldwin[1] | Sep. 1, 29, 2023<br>Oct. 9, 20, 2023<br>Nov. 7, 10, 16, 22, 2023<br>Dec. 18, 2023<br>Feb. 8, 9, 13, 21, 2024<br>Oct. 11, 2024<br>Jan. 31, 2025<br>June 13, 16, 2025 | Sep. 1, 2023 (¶40)<br>Nov. 16, 2023 (¶58)<br>Nov. 22, 2023 (¶¶48, 51)<br>Feb. 13, 2024 (¶¶ 37, 51, n.26)<br>Oct. 11, 2024 (¶43)<br>Jan. 31, 2025 (¶¶46, 47)<br>June 13, 2025 (¶62) | McLaren's Initial Disclosures: likely to have discoverable information concerning McLaren's IT systems, both prior and subsequent to the execution of the MCSA, and information concerning costs related to McLaren's damages. |
| Derek Morkel | Sep. 29, 2023 | N/A | McLaren's Initial Disclosures: likely to have discoverable information concerning McLaren's IT systems, both prior and subsequent to the execution of the MCSA, as well as information concerning the recommendations Gartner provided to McLaren and concerning McLaren's damages. |
| David Mazurkiewicz | Sep. 29, 2023 | N/A | McLaren's Initial Disclosures: likely to have discoverable information concerning |

[1] Brenda Baldwin was present during all of the conversations, except the discussion with Dennis Gallitano on June 12, 2025, which Dr. Langenfeld considered but did not cite to in his report. ECF No. 71-2, PageID.1106-07.

| | | | McLaren's IT systems, both prior and subsequent to the execution of the MCSA, and information concerning McLaren's damages. |
|---|---|---|---|
| John Tikka | Nov. 16, 2023 | Nov. 16, 2023 (¶58) | Gartner's Initial Disclosures: has information regarding the work performed by Gartner under the MCSA, SOWs and/or Change Order. |
| Dennis Gallitano | Jun. 12, 2025 | N/A | Gartner's Initial Disclosures: has information regarding the negotiation of the contract between McLaren and the new IT provider selected by McLaren following the RFP process. |
| Tiffany Laurenz | Nov. 16, 2023 | Nov. 16, 2023 (¶58) | McLaren's Initial Disclosures: likely to have discoverable information concerning the negotiation and procurement of McLaren's current IT systems, as well as information concerning McLaren's IT systems, both prior and subsequent to the execution of the MCSA. |
| Michelle Toups | Nov. 22, 2023 Dec. 18, 2023 | Nov. 22, 2023 (¶¶48, 51) | Undisclosed |
| Nancy Petack | Oct. 20, 2023 Nov. 7, 10, 2023 | N/A | Undisclosed |
| Katerina Serdenkovski | Oct. 20, 2023 Nov. 7, 10, 2023 Feb. 21, 2024 | N/A | Undisclosed |
| Julie Hopkins | Sep. 29, 2023 | N/A | Undisclosed |

*See Langenfeld Report*, ECF No. 71-2 (sealed), PageID.1106-07; *McLaren Initial Disclosures*, ECF No. 72-2, PageID.1153-54; *Gartner Initial Disclosures*, ECF No. 73-5, PageID.1213-14.

4

Gartner specifically challenges McLaren's failure to disclose four of the interviewees, seeks the production of Dr. Langenfeld's interview notes (if any may exist) for all of the interviews, and also seeks to re-open fact discovery to permit Gartner's attorneys to depose any individuals who were interviewed by Dr. Langenfeld.

This matter was already raised in an informal telephonic discovery conference with the parties, previous to which the parties had submitted succinct e-mail briefs to the Court in support of their positions. After considering those briefs and allowing the parties to engage in oral argument in support of their positions, the Court attempted to resolve the matter by ruling that Gartner's expert should be permitted access to the same individuals interviewed by McLaren's expert, and that Gartner's expert should be allowed to interview them. Gartner refused to accept the Court's ruling and sought leave to file a formal motion to compel, which the Court allowed. The matter has been fully briefed and is now before the Court.

## II. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). If a party fails to respond to discovery, including if that party's discovery response is evasive or incomplete, the requesting party may move for an order compelling discovery. Fed. R. Civ. Proc. 37(a). The party objecting to the discovery

request bears the burden of showing that the discovery requests are "improper." *Strategic Mktg. & Research Team, Inc. v. Auto Data Solutions, Inc.*, No. 2:15-cv-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017)(Murphy, J.).

Discovery matters are "committed to the sound discretion of the district court." *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) (citations and quotations omitted); *see also Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) ("We review a district court's discovery-related rulings under the highly deferential abuse-of-discretion standard."). In deciding whether to compel discovery, the Court should balance the "burden or expense of the proposed discovery" with "its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

## III. DISCUSSION

### A. Motion to Seal

Gartner moved to seal McLaren's Proposed Expert Report (ECF No. 71-2) and an additional spreadsheet (ECF No. 71-3) on the basis that McLaren designated these exhibits as confidential under the Stipulated Protective Order in this case (ECF No. 28). ECF No. 70. But the protective order itself acknowledged that self-designating a document as confidential does not necessarily satisfy the "more demanding standards for sealing off judicial records from public view." ECF No. 28, PageID.544 (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016)); *see also McPheeters v. United Servs. Auto. Ass'n*,

549 F. Supp. 3d 737, 751 (S.D. Ohio July 13, 2021) ("There is a 'stark' difference between, on the one hand, the propriety of allowing litigants to exchange documents in secret, and on the other hand, the propriety of allowing litigants to shield from public view those documents which are ultimately relied on in the Court's adjudication.").

In fact, in this Circuit, "[c]ourts are not permitted to take motions to seal lightly." *Lyngaas v. Solstice Benefits, Inc.*, No. 22-10830, 2023 WL 6302998, at *1 (E.D. Mich. Sep. 27, 2023)(Ivy, M.J.). "There is a 'strong presumption in favor of openness' regarding court records," and the party seeking to limit public access to court proceedings or records bears the "heavy" burden of overcoming the presumption of openness. *Shane Grp.*, 825 F.3d at 305 (noting that "even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason").

Here, despite the parties' failure to perform a "detailed analysis" to justify sealing, the Court will **GRANT IN PART** and **DENY IN PART** the motion to file under seal (ECF No. 70). *See* E.D. Mich. R. 5.3(b)(3)(A)(iv). On one hand, the Court finds that the expert report and spreadsheet contain some sensitive business information unrelated to the pending Motion to Compel that would not help the public's understanding of the Court's ruling. Because most of the information sought to be filed under seal is not of consequence to the Court's conclusions about the pending Motion to Compel, the public does not need

7

access to the entirety of those documents to understand the Court's reasoning. *See McPheeters*, 549 F. Supp. 3d at 752 (noting that the public's interest was "limited" where the public would not need to "review the specific contents . . . to understand" the parties' arguments); *Lyngaas*, 2023 WL 6302998, at *2 ("As the information under seal has little, if any, bearing on the Court's conclusions, there is little harm to the public in granting the motion.").

On the other hand, the public needs access to the parts of the expert report and spreadsheet that the Court relied upon to resolve the pending Motion to Compel so the public may "assess for itself the merits of [the] judicial decision[ ]" and "ascertain[ ] what evidence and records the [d]istrict [c]ourt[ ] . . . relied upon in reaching [its] decision[ ]." *Shane Grp.*, 825 F.3d at 305. This includes the parts of the expert report that cite to interviews, the table that describes the interviews as "materials considered," and references to the spreadsheet.

Therefore, the Court **DIRECTS** the parties to meet and confer and file public versions and revised redactions as needed of the expert report and spreadsheet for which the proposed sealing has been denied within seven (7) days of this Order. *See* E.D. Mich. R. 5.3(b)(3)(C)(iii)(2) ("The court will not consider or rely on the unredacted version of the documents sought to be sealed and as to which the sealing motion was denied, unless the moving party promptly files the unredacted version."). The information sought to be sealed that the Court relied upon for its analysis

in this Order may not be redacted. The parts deemed sensitive "may be redacted to exclude the irrelevant information and filed in the court record in redacted form, but not under seal." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 782 (E.D. Mich. May 1, 2019)(Lawson, J.).

Furthermore, because the parties have filed numerous motions to seal without providing a detailed analysis as to the necessity to do so, the parties are warned that "[t]he Court will not overlook a failure to articulate good cause for a seal in future filings." *Lyngaas*, 2023 WL 6302998, at *2; *see also United States v. Han*, No. 21-20256, 2024 WL 3905811, at *1 (E.D. Mich. Aug. 22, 2024)(Parker, J.) (citing *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.2d 589, 594 (6th Cir. 2016)) (explaining that the party seeking to seal documents must "(1) detail the necessity and legal support for sealing, (2) explain why the need for privacy outweighs the public's right to access, and (3) ensure the request is limited in its scope"). Motions not strictly in compliance with E.D. Mich. R. 5.3(b) will be denied.

## B. Motion to Compel Production of Interview Notes

Gartner moved to compel the production of Dr. Langenfeld's notes from the conversations cited in his report. Gartner argues it is entitled to the expert witness's notes under Federal Rule of Civil Procedure 26(a)(2)(B) and as a source of impeachment material.

Rule 26(a)(2)(B)(ii) provides that expert witnesses must provide a written report containing the "facts or data considered by the witness in forming them." Fed. R. Civ. Proc. 26. In the Sixth Circuit, "*any* information supplied to an expert witness must be disclosed under the plain terms of Rule 26(a)(2)(B), regardless of whether it is privileged or whether it consists of attorney opinion work product." *Rochow v. Life Ins. Co. of N. Am.*, No. 04-73628, 2010 WL 100633, at *3 (E.D. Mich. Jan. 5, 2010)(Whalen, J.) (emphasis in original) (citing *Reg. Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 174 (6th Cir. 2006)).

In response, McLaren argues that the production of Dr. Langenfeld's notes is unnecessary because the information provided by the witnesses to the expert is sufficiently described in the report. This point is well taken as to the witness interviews that were cited or "relied upon," but it is not clear from Dr. Langenfeld's report exactly what information he received from witnesses that he "considered" but did not cite or "rely upon." *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1195 (11th Cir. 2013) (citations omitted) ("Rule 26(a)(2)(B)'s disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert."); *see also Carroll Co. v. Sherwin-Williams Co.*, No. WMN-11-1700, 2012 WL 4846167, at *3 (D. Md. Oct. 10, 2012) (citations omitted) ("[P]arties must produce any information furnished to a testifying expert that such an expert . . . reflects upon, reads, and/or uses in connection

with the formulation of his opinions, even if such information is ultimately rejected.").

Courts often compel the disclosure of such expert notes that were merely considered even if not relied upon. *See, e.g.*, *Hinchee*, 741 F.3d at1195 (upholding order compelling disclosure of an expert's personal notes and e-mail communications with non-attorney experts); *Whole Women's Health v. Lakey*, 301 F.R.D. 266, 271 (W.D. Tex. Aug. 21, 2014) (holding that written communications between testifying experts and a non-attorney were discoverable where the non-attorney had "influenced the testimony of . . . testifying experts," rendering such information "certainly relevant . . . to adequately assess the reliability of those opinions").

The case McLaren cites in support of its position involved a situation where the parties specifically agreed to limit expert discovery to those materials that had been "relied upon," not merely "considered," by an expert. *See Kalra v. Adler Pollock & Sheehan, P.C.*, 2020 WL 7828790, at *4 n.2 (D. Conn. Dec. 31, 2020) (declining request for the notes between an expert and a fact witness). Here the parties reached no such agreement.

McLaren also contends that production of the notes would be duplicative of the depositions that are yet to be taken of Dr. Langenfeld, during which Gartner will be able to assess the reliability of Dr. Langenfeld's report. In support of this position, McLaren cites to

11

*Familias Unidas Por La Educacion v. El Paso Indep. School District*,
2022 WL 2671864, at *3 (W.D. Tex. July 11, 2022). In that case, the
expert admitted that she no longer had the notes from her conversation
with a fact witness. *Id*. at *1. The court found that the expert was not
required to disclose the notes because the "substance of the notes was
contained in the report" and there was "no evidence suggesting [the
expert] was attempting to manipulate her expert opinion in bad faith."
*Id*. at *3. The court also noted that "any potential harm" from the failure
to disclose the notes "could be cured by allowing the opposing party to
cross-examine the expert." *Id*. In particular, the court found that the
expert's failure to retain her notes and the conflicting deposition
testimony between the expert and fact witness would sufficiently allow
the plaintiff to challenge the expert's opinion during cross-examination,
"making the non-disclosure of her notes harmless." *Id*.

    *Familias Unidas* may be distinguished from the case at hand for
several reasons. First, the court in *Familias Unidas* found that the
substance of the conversation between the expert and the fact witness
was sufficiently contained in the report, whereas the majority of the
conversations Dr. Langenfeld "considered" were not described at all in
the report. *See id*. at *3. Second, while the expert in *Familias Unidas*
could be cross-examined on her failure to retain her notes, here it is not
clear that any notes were taken in the first place, let alone destroyed. *See
id*. Assuming for the sake of argument that such notes exist, they could

be used either to refresh Dr. Langenfeld's recollection of those conversations, or for impeachment—which may be important given that many of these conversations date back to a year or more.

Courts have recognized that documents such as notes that are considered by an expert, even if not relied upon, may be useful for impeachment purposes. *See, e.g.*, *United States v. Am. Elec. Power Serv. Corp.*, No. CIV.A. 2:99-CV-1182, 2006 WL 3827509, at *2 (S.D. Ohio Dec. 28, 2006) (citations omitted) ("[D]ocuments considered but rejected by the expert trial witness could be even more important for cross-examination than those actually relied upon by him."); *see also Moroughan v. County of Suffolk*, No. CV 12-512 (JFB) (AKT), 2018 WL 11268801, at *6 (E.D.N.Y. Feb. 6, 2018) (requiring production of investigative notes with eye witnesses because they "have significant value for impeachment purposes if the witnesses testify inconsistently with what the notes show they told" police and the information is not available from other sources given the timing of the notes).

For the above reasons, to the extent such notes exist, McLaren is **ORDERED** to produce them to Gartner under Rule 26(a)(2)(B).

## C. Motion to Compel Deposition of Undisclosed Witnesses

Gartner argues there is a "fundamental unfairness in allowing an expert to rely upon discussions with a previously undisclosed witness." ECF No. 71-1, PageID.1059. Thus, Gartner seeks an order compelling

McLaren to make available for depositions employees with whom Dr. Langenfeld spoke in connection with his damages analysis if those employees were not previously disclosed by McLaren as potential fact witnesses. Gartner contends that the "undisclosed" witnesses include Serdenkovski, Petack, Toups, Hopkins, Gallitano, and Tikka.

McLaren responds that two of these witnesses, Gallitano and Tikka, were disclosed during discovery by Gartner, and that Gartner had an opportunity to depose them. *See Gartner Initial Disclosures*, ECF No. 73-5, PageID.1213-14. McLaren also points out that Gartner has already taken fourteen depositions, and the parties previously agreed to a total of fifteen fact witness depositions per side. *See* Feb. 16, 2024 Email From Fliegauf to Brennan, ECF No. 73-2, PageID.1200. According to McLaren, Gartner "now wishes to disregard the agreed-upon limit," when the parties in fact agreed to "seek leave of court if [they] cannot agree to the taking of additional fact witness depositions." *Id*. Gartner responds that it is now seeking such leave.

At the June 25, 2025 status conference, the Court sought to resolve this dispute by ruling that Gartner's rebuttal expert should be permitted to speak with the witnesses referenced in the report who were not previously deposed, that is, Serdenkovski, Petack, Toups, and Hopkins. This remedy does not go far enough for Gartner. It demands to depose the previously undisclosed witnesses "in the ordinary course" on the record and under oath. ECF No. 74, PageID.1226 n.1. In support, Gartner

points to cases in which courts reopened deposition of previously undisclosed witnesses that an expert relied upon. *See Multiple Energy Techs., LLC v. Under Armour, Inc.*, No. 2:20-CV-664-NR, 2024 WL 5198797, at *5, *7 (W.D. Pa. Dec. 23, 2024) (finding that "any prejudice" from defendant's failure to disclose the identities of witnesses that experts conversed with and relied upon in their report could be "cured by re-opening discovery on a limited basis"); *Intex Recreation Corp. v. Bestway USA Inc.*, No. LA CV16-3300 JAK (Ex), 2023 WL 9687197, at *3 (C.D. Cal. Nov. 27, 2023) (holding that late disclosure could be "made harmless by allowing Plaintiffs to depose [undisclosed witness] with respect to the undisclosed matters").

But here, even assuming McLaren had a duty to disclose all of these individuals,[2] the remedy Gartner seeks for such failure to disclose—ordering the deposition of any undisclosed witnesses—is unwarranted. The main flaw in Gartner's argument is that while Dr. Langenfeld "considered" discussions with all of the employees he interviewed, both the previously disclosed and the undisclosed, he only "relied" on, or cited to, conversations with Brenda Baldwin (seven conversations), John Tikka (on November 16, 2023), Tiffany Laurentz (on November 16, 2023), and

---

[2] McLaren explains that it did not identify those individuals in Initial Disclosures because the subject-matter of their knowledge was not at issue, that is, damages McLaren is not seeking to collect. McLaren further stated it did not intend to call the undisclosed individuals as witnesses.

Michelle Toups (on November 22, 2023). Baldwin participated in the conversations with Tikka and Laurentz, on November 16, 2023, and in the conversation with Toups on November 22, 2023. Baldwin, Tikka, and Laurentz were all previously disclosed as possible witnesses. Only Toups was both undisclosed and participated in a conversation with Dr. Langenfeld that he cited to, but that conversation was also witnessed by Baldwin—who was disclosed.

As to conversations with the undisclosed witnesses that Dr. Langenfeld *considered* but did *not* rely upon or cite to (those with Petack, Serdenkovski, and Hopkins), there is no prejudice to Gartner from having to "accept" Dr. Langenfeld's "characterization of [his] conversations with these undisclosed fact witnesses" because he did not characterize his conversations with them at all. *See GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00071-JRG-RSP, 2020 WL 4288323, at *3 (E.D. Tex. July 26, 2020). Unlike the expert reports in *MET* which "repeatedly cite[d] to conversations" and "relie[d] on [the experts'] interviews" with the undisclosed witnesses "as one of the bases for [their] opinions," Dr. Langenfeld did not cite to the conversations with the undisclosed witnesses in the substance of his report (only in the materials "considered"), except as described above. *See* 2024 WL 5198797, at *1, *8; *see also Intex Recreation Corp.*, 2023 WL 9687197, at *3 (damages experts "relie[d] on discussions with an undisclosed fact witness . . . to inform his opinions"); *see also* Fed. R. Civ. Proc. 37(c) ("If a party fails to provide

16

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to *use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.*") (emphasis added).

In *MET*, *Intex*, and *GREE*, the harm was addressed by striking the testimony of undisclosed witnesses rather than by re-opening deposition. Here, the same harm is not present; there is no such testimony to be stricken. *See Multiple Energy Techs.*, 2024 WL 5198797, at *3-9 (discussing motion to strike parts of expert reports that rely on undisclosed witnesses); *Intex Recreation Corp.*, 2023 WL 9687197, at *6-7 (discussing motion to strike undisclosed expert opinion); *GREE*, 2020 WL 4288323, at *3 (discussing motion to strike untimely disclosed facts and opinions regarding fact witnesses). Thus, there is no basis to compel the deposition of Serdenkovski, Petack, Hopkins, and Gallitano because the expert only "considered" their conversations and did not rely upon them in his report.

As stated above, the only undisclosed witness that Dr. Langenfeld relied on was Toups. But Baldwin participated in that conversation and her identity was disclosed. The conversation with Tikka was relied upon by Langenfeld, but Tikka was disclosed by Gartner as a person with information—and clearly was known to Gartner and could have been deposed. And Laurentz was also relied upon by Langenfeld—but her

name was disclosed, and Baldwin participated in the conversation between her and Langenfeld as well.

Thus, while the expert report in *MET* "seem[ed] to exclusively cite to [one specific undisclosed witness] for certain calculations," Dr. Langenfeld only cites to discussions that included one specific *disclosed* witness, Brenda Baldwin, throughout his report. *See* 2024 WL 5198797, at *7. Indeed, Brenda Baldwin participated in seventeen of the eighteen conversations considered by Dr. Langenfeld. Gartner deposed Brenda Baldwin. That alone negates Gartner's alleged need—or entitlement—to depose Michelle Toups or John Tikka because Gartner could have obtained the same information from Brenda Baldwin. *See GREE*, 2020 WL 4288323, at *1, *3 (striking information that the expert "relie[d] upon" from undisclosed fact witnesses "that was not also provided *from another source*" such as through another witness) (emphasis added).

Furthermore, Gartner is not prejudiced by the late disclosure in the same way the experts in *MET* or *GREE* were because Gartner had not yet submitted its expert report. *See Multiple Energy Techs.*, 2024 WL 5198797, at *7; *GREE*, 2020 WL 4288323, at *3 ("Much of this new information was disclosed only in Supplemental or Rebuttal Expert Reports, after GREE's experts had completed their reports, preventing GREE's experts from opining on this information.").

Therefore, the Court concludes that its ruling during the June 25, 2025 Status Conference represents the fairest and most efficient way to

resolve this dispute. Gartner's rebuttal expert may interview any of the same witnesses that Dr. Langenfeld interviewed.  But the Court will not reopen fact discovery at this late stage to permit additional witness depositions for witnesses who were either merely "considered" by Dr. Langenfeld, or if they were "relied upon," they were either already disclosed to (or by) Gartner or their information could have been obtained through another disclosed source, such as Brenda Baldwin.

### D. Motion to Reopen Deposition

Gartner also seeks to reopen the depositions of Brenda Baldwin, Tiffany Laurenz, John Tikka, and Derek Morkel for the limited purpose of questioning them about (1) their discussions with Dr. Langenfeld, and (2) documents produced by McLaren after the close of fact discovery. ECF No. 71-1, PageID.1060.

"A person who has previously been deposed in a matter may be deposed again, but only with leave of the court." *Off. Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 2016 WL 1180194, at *3 (E.D.N.Y. Mar. 25, 2016) (citing Fed. R. Civ. Proc. 30(a)(2)(A)(ii)). Courts "typically" reopen depositions "where there is new information on which a witness should be questioned," *id.* (citations omitted) (collecting cases), when the "original depositions were incomplete," or when "further information is discovered after a first deposition," *Pan Am. Life Ins. Co. v. Louisiana Acquisitions Corp.*, No. CV 13-5027, 2017 WL 11700035, at *4 (E.D. La. July 31, 2017). Courts should consider factors set forth in

Rule 26(b)(2), such as "whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit." *Sentry Ins. v. Brand Management Inc.*, Nos. 10–CV–347 (ENV), 11–CV–3966 (ENV), 2012 WL 3288178, at *8 (E.D.N.Y. Aug. 10, 2012) (citations omitted).

### 1. Inaccurate Testimony

Gartner asserts that it should be allowed to reopen the depositions of four previously-deposed individuals to question them about their discussions with Dr. Langenfeld. Gartner argues their deposition was arguably inaccurate or incomplete because the witnesses did not mention talking to the expert during their deposition. *See Pan Am. Life Ins. Co.*, 2017 WL 11700035, at *4; *see also* Fed. R. Civ. Proc. 37(3)(A)-(B) (providing that if a deponent fails to answer a question, or answers evasively or incompletely, any other party may move for an order compelling an answer and for appropriate sanctions). Gartner claims that its counsel specifically asked McLaren's witnesses "about any conversations they had relevant to the subject matter of this litigation," but "not one witness divulged that they had spoken with Dr. Langenfeld." ECF No. 71-1, PageID.1055.

However, a review of the deposition transcripts provided by the parties does not entirely support this position. *First*, Brenda Baldwin was

20

the only deponent who was specifically asked whether she had "discussed this lawsuit with anybody other than her attorneys." *Deposition of Brenda Baldwin* ("Baldwin Dep."), ECF No. 73-1, PageID.1199, 17:3-5. She responded that she did not recall. *Id.* Gartner's skepticism of this answer seems justified in light of the fact that Dr. Langenfeld reports having spoken with Baldwin at least 15 times between September 1, 2023 and January 31, 2025, before her deposition on March 20, 2025. *Langenfeld Report*, ECF No. 71-2, PageID.1106-07. But when viewed in context, Baldwin's answer is more understandable. The exchange with counsel proceeded as follows:

> Q. Did you do anything to prepare for this deposition?
> A. Just trying to remember previous things.
> Q. And what did you do to try to remember previous things?
> A. I talked to Kurt [Fliegauf] yesterday. . . . I looked at documents. . . Just normal documents that we produce on a regular basis to run our business. . . .
> Q. Aside from your attorneys, have you discussed this deposition with anybody? . . .
> A. No.
> Q. You understand that we're here today because McLaren has filed a lawsuit against Gartner, correct?
> A. Yes.
> Q. Have you discussed this lawsuit with anybody other than your attorneys?
> A. I don't recall.

*Baldwin Dep.*, ECF No. 73-1, PageID.1194, 1198-99. McLaren argues that Gartner could have clarified this line of questioning by honing in on whether Baldwin had discussed damages with McLaren's experts rather

than posing the general question of whether she had "discussed this lawsuit with anybody" in the context of asking what she did "to prepare for this deposition." But regardless, Baldwin's failure to recall may certainly be used for impeachment purposes without reopening the deposition, and her memory may be refreshed if there are interview notes produced, as discussed above. *See Whole Women's Health v. Lakey*, 301 F.R.D. at 271 (declining to reopen deposition of testifying expert whose deposition occurred before fact witness' involvement was revealed where court ordered production of written communications between expert and fact witness because "[a]ny inquiry into [the expert's] communications with [the fact witness] could be explored at trial and through the produced documents").

The Court concludes that this matter may be fully explored at trial without prejudice to either party. Gartner does not claim that Baldwin was not properly disclosed, and Gartner knew she had information about McLaren's IT systems and damages based on McLaren's Initial Disclosure. *See Sentry Ins.*, 2012 WL 3288178, at *8 (considering "whether the party requesting the [second] deposition has had other opportunities to obtain the same information" and "whether the burden of a second deposition outweighs its potential benefit"). Gartner's counsel could have probed further as to whether Baldwin had conferred with McLaren's expert, but did not do so. Gartner will have access to whatever

notes were kept of Baldwin's conversations with the expert, and may fully explore this issue with both Baldwin and Dr. Langenfeld at trial.

*Second*, two other previously disclosed witnesses, Morkel and Laurenz, spoke with Dr. Langenfeld in September and November 2023, respectively. *Langenfeld Report*, ECF No. 71-2, PageID.1106-07. At their depositions in May and March 2025, respectively, they were asked about their involvement in creating or helping to determine McLaren's lost savings opportunity damage figure of $66,554,938, *not* whether they spoke with anyone about this lawsuit. Both of them denied involvement in creating the million-dollar figure. For instance, Laurenz testified:

> Q. Have you seen that 66 million number before?
> A. I have not.
> Q. Okay. And you weren't involved in creating [McLaren's lost savings opportunity damages figure]?
> A. I was not.

*Deposition of Tiffany Laurenz*, ECF No. 72-4, PageID.1168, 280:24-25. Similarly, Morkel testified:

> Q. [T]his says, "McLaren incurred $66,554,938 in lost savings opportunity damages . . . [W]ere you involved in calculating that figure?
> A. No. . . .
> Q. Do you have any understanding of how that figure was calculated?
> A. No.

*Deposition of Derek Morkel*, ECF No. 72-5, PageID.1172-73, 249:19-250:1.

Gartner asserts that these responses are inconsistent with Dr. Langenfeld's report, and alleges that calculating the damages figure was the precise purpose of their conversation. But the report does not indicate that Morkel or Laurenz (or Tikka[3]) were involved in the damages calculations. In fact, Dr. Langenfeld does not cite or rely upon his discussion with Morkel in the report at all. He does rely on the discussion with Baldwin, Laurenz, and Tikka, but only to explain that "spending trackers . . . were compiled in the usual course of business and tracked [McLaren's] payments to HCL over time" and to identify three of the five categories of costs associated with the transition from Atos to HCL. *Langenfeld Report*, ¶ 58, n.54-57. While Gartner challenges that Laurenz was not disclosed as having information on damages, there is no indication that Dr. Langenfeld discussed a specific damages figure with any of the witnesses.

Thus, the cited testimony of Morkel and Laurenz does not suggest inaccuracies or inconsistencies of the nature that would justify reopening their depositions for purposes of questioning them about their discussions with Dr. Langenfeld.

---

[3] Gartner also seeks to re-depose Tikka but does not cite to his deposition testimony nor any other substantive reason to do so besides being referenced in the expert report.

## 2. Newly-Produced Documents

Gartner also seeks to reopen the depositions of Brenda Baldwin, Tiffany Laurenz, John Tikka, and Derek Morkel for the limited purpose of questioning them about documents produced by McLaren after the close of fact discovery—specifically, about (a) a spreadsheet and (b) other documents identified during Derek Morkel's deposition. *See Haltman*, 2016 WL 1180194, at *3 (noting that courts "typically" reopen depositions "where there is new information on which a witness should be questioned"). Gartner also seeks to depose "fact witnesses who created recently-produced damages documents" without identifying such witnesses.

### (a) FY 2024 Spreadsheet

Fact discovery closed on May 16, 2025. About a month later, on June 13, 2025, McLaren made a supplemental production consisting of an Excel spreadsheet titled "FY2024 spend." *Spreadsheet*, ECF No. 71-3 (sealed), PageID.1128. Dr. Langenfeld "considered" and cited to that spreadsheet (titled "McLaren0169021, ITTRAN and MSP FY2024.xlsx" in the report) five times in his June 17, 2025 expert report.

While Gartner asserts that the spreadsheet is a "key document regarding its 2023-2024 damages," McLaren explains that it produced numerous other similar spreadsheets for prior years, yet Gartner "inexplicably" did not ask Brenda Baldwin—disclosed as having knowledge about McLaren's damages—a single question about those

previously-produced spreadsheets. Further, McLaren argues that, if the spreadsheets were so critical to Gartner's examination of the witnesses, Gartner should have marked *all* of the prior-produced spreadsheets as exhibits during Morkel's deposition and asked Morkel specific questions about all of them. Instead, Gartner only marked one of the spreadsheets as an exhibit and only asked Morkel general questions about them, despite McLaren's representation that:

> McLaren's current CIO, Derek Morkel, is prepared to testify at deposition as to those cost savings. Gartner is free to ask Mr. Morkel about the documents included in supplemental productions, and McLaren's efforts to mitigate the damage caused by Gartner's failure.

*Dec. 5, 2024 Letter from Fitzgerald to Brennan*, ECF No. 74-1, PageID.1233.

However, Gartner alleges that the 2024 spreadsheet identifies for the first time various categories of spending by McLaren for calendar year 2024—specifically, spending data for CDW, CereCore, Data Partners, and InfoSys for FY 2024. *See Langenfeld Report, Table 4.2*, ECF No. 71-2 (sealed), PageID.1116; *id.* at ¶ 40 n.35 ("Spending data for CDW, CereCore, and Data Partners was provided for FY 2024.").

To be sure, the failure to specifically inquire about the previously-produced spreadsheets suggests, at the very least, that deposition need not be reopened as to Baldwin, Laurenz, and Tikka. But the Court finds that these new data categories eventually included in the expert report

justify permitting Gartner to reopen the deposition of Morkel only, for the limited purpose of asking about the FY2024 spreadsheet. Such deposition is not to exceed four hours and must be completed within the amended discovery schedule included in this Order. The deposition shall not further delay the expert discovery schedule.

### (b) Morkel Supplemental Documents

At the June 25, 2025 Status Conference, the Court ordered McLaren to produce certain previously unproduced documents identified in Morkel's deposition ("Morkel Supplemental Documents") and extended the expert discovery schedule to allow McLaren to do so. Gartner now seeks to reopen the depositions of Brenda Baldwin, Tiffany Laurenz, John Tikka, and Derek Morkel for the limited purpose of questioning them about the additional 120 documents produced after the depositions.

Gartner argues it never had an opportunity to question the four witnesses about the new evidence. But Gartner does not show how the supplemental documents call into question the accuracy of earlier testimony or render a witness's testimony incomplete.

While Gartner argues it "should be permitted to reopen the depositions of McLaren's witnesses upon whom Dr. Langenfeld relied and/or considered for his expert report," Dr. Langenfeld did not rely on the supplemental documents in his report, and there is no indication he considered the additional material either.

To the extent Gartner seeks to depose the individual(s) who "created these newly produced documents," Gartner may pursue this line of questioning with Morkel in his reopened deposition. The deposition will not be permitted to further delay the expert discovery schedule. Indeed, "[a]ll good things, including discovery, must come to an end." *U.S. ex rel. Taylor v. Hicks*, 513 F. 3d 228, 238 (5th Cir. 2008) (where discovery lasted three and a half years).

## IV. CONCLUSION

For the foregoing reasons, Gartner's Motion to Compel (ECF No. 71) is **GRANTED IN PART** and **DENIED IN PART**. It is **HEREBY ORDERED** that McLaren shall produce Dr. Langenfeld's interview notes within seven (7) days of the entry of this Order. It is **FURTHER ORDERED** that Gartner be permitted to depose Morkel about the FY 2024 spreadsheet and the creation of the Morkel Supplemental Documents only. All other requests are hereby **DENIED**.

It is **FURTHER ORDERED** that McLaren's expert report is due by October 6, 2025, and that the expert discovery cutoff is re-set for November 3, 2025. The additional production of documents and depositions hereby ordered shall not further delay the expert discovery schedule.

It is **FURTHER ORDERED** that Gartner's Motion to Seal (ECF No. 70) is **GRANTED IN PART** and **DENIED IN PART**. It is **ORDERED** that the parties shall confer and file public redacted versions

of the expert report and the spreadsheet for which the proposed sealing was denied in accordance with this Order within seven (7) days of entry of this Order.

**SO ORDERED**.

Dated: September 10, 2025          /s/Terrence G. Berg
                                   TERRENCE G. BERG
                                   UNITED STATES DISTRICT JUDGE